COURT OF APPEALS
DECISION
DATED AND FILED

April 5, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2021AP1237-CR**
**2021AP1238-CR**
STATE OF WISCONSIN

Cir. Ct. Nos. 2018CF5660
2019CF128

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LARRELL J. WILLIAMS,

DEFENDANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS and DAVID A. FEISS, Judges. *Affirmed.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Larrell J. Williams, *pro se*, appeals his judgments of conviction for armed robbery with the use of force as a party to a crime, second-degree recklessly endangering safety as a party to a crime, and two counts of possession of a firearm by a felon. He also appeals the order denying his postconviction motion. Williams argues that the trial court[1] erred in denying his motion to suppress the gun found when police searched his vehicle, asserting that they did not have reasonable suspicion to conduct the stop. He also argues that his trial counsel was ineffective in several ways, and that his due process rights were violated by the failure of a police detective to retain the notes of his interviews with two witnesses to the armed robbery. Upon review, we affirm.

## BACKGROUND

¶2 The charges against Williams stem from his role in a robbery set up through a fake car sale advertised on Craigslist. In October 2018, T.R., via text messages and emails, negotiated the purchase of an Audi listed in the advertisement, and was to meet the seller in an alley around North 70th Street in Milwaukee. T.R. told police that he was robbed by two Black males at the meeting place, one of whom pulled a handgun and fired a shot into the ground by T.R.'s feet. Police recovered a spent shell casing at the scene.

¶3 Subsequently, in November 2018, officers on routine patrol spotted a vehicle parked at a gas station on West Appleton Avenue in Milwaukee. The officers observed that the vehicle did not have a front license plate, and that its windows were darkly tinted. When the officers ran the rear license plate, they found

---

[1] Williams' motion to suppress was heard by the Honorable T. Christopher Dee, and his trial was before the Honorable Michelle Ackerman Havas; we refer to them both as the trial court. Williams' postconviction motion was decided by the Honorable David A. Feiss; we refer to him as the postconviction court.

that there was no specific vehicle information attached to the plate, but that it had been registered in Portage, Wisconsin.

¶4      The officers were attempting to make contact with a female passenger in the vehicle when a male exited the gas station and came toward the vehicle.  The officers made contact with him; he was identified as Williams, and stated that he owned the vehicle.  The officers could smell marijuana on Williams as well as coming from inside the vehicle.  The officers therefore conducted a search of the vehicle, and discovered a handgun behind the passenger seat.  Williams attempted to flee on foot, but was apprehended and arrested.

¶5      A test of the gun found in Williams' vehicle indicated that it was the same gun used in the Craigslist robbery.  The cases were joined for trial.

¶6      Prior to trial, Williams filed a motion to suppress the evidence found in his vehicle—most notably, the gun—asserting that the officers lacked reasonable suspicion to conduct the search.  After a hearing on the motion, at which one of the arresting officers testified, the trial court denied Williams' motion, finding that the lack of a front license plate was a sufficient reason to justify the search.

¶7      The matter proceeded to a jury trial in October 2019.  Williams was found guilty on all counts.

¶8      Williams elected to proceed with this appeal *pro se*.  In his postconviction motion, he argued that the trial court erred in denying his suppression motion.  He further asserted that his trial counsel was ineffective for several

3

reasons: failing to bring a ***Daubert***[2] motion to preclude the State's firearms examiner from testifying as an expert; failing to request a jury instruction relating to the testimony of the police detective who conducted interviews with two witnesses to the robbery of T.R. and did not retain his notes of those interviews; failing to request a more detailed jury instruction on identification testimony; failing during the suppression motion hearing to impeach the credibility of the arresting officer who conducted the stop of his vehicle with regard to the timing of his check of the license plate; and failing to read the search warrants regarding the cell phone evidence relating to the robbery of T.R., and further investigate the same. He also argued that his due process rights were violated by the detective's failure to retain his interview notes.

¶9      The postconviction court rejected all of Williams' arguments, and thus denied Williams' motion without a hearing. This appeal follows.

**DISCUSSION**

¶10      Williams raises the same arguments on appeal as he did in his postconviction motion. We address each of them in turn.

*Denial of Motion to Suppress*

¶11      We first review Williams' argument that the trial court erroneously denied his motion to suppress. The review of a trial court's decision on a motion to suppress presents a mixed question of fact and law. ***State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We will not reverse the trial court's findings

---

[2] *See **Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 597 (1993) (under Federal Rule 702, the federal equivalent to WIS. STAT. § 907.02, the trial court serves as a gatekeeper to ensure that scientific testimony is both relevant and reliable).

of fact unless they are clearly erroneous; however, we review *de novo* the application of constitutional principles to those facts. *Id.*

¶12    "The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect people from unreasonable searches and seizures." *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729 (footnotes omitted).  However, "an investigatory stop for which a law enforcement officer [has] reasonable suspicion 'in light of his experience that criminal activity may be afoot'" is constitutionally permissible. *County of Grant v. Vogt*, 2014 WI 76, ¶27, 356 Wis. 2d 343, 850 N.W.2d 253 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

¶13    In that vein, "[t]here is no question that a police officer may stop a vehicle when he or she reasonably believes the driver is violating a traffic law[.]" *State v. Betow*, 226 Wis. 2d 90, 93, 593 N.W.2d 499 (Ct. App. 1999).  Furthermore, "[a]fter a justifiable stop is made, the officer may expand the scope of the inquiry[,]" but only for purposes of investigating "additional suspicious factors [that] come to the officer's attention." *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124 (citation omitted; third set of brackets in *Hogan*).

¶14    In this case, the officers observed that Williams' vehicle did not have a front license plate in violation of WIS. STAT. § 341.15(1) (2019-20).[3] Additionally, the officers noted that his vehicle had darkly tinted windows, and subsequent testing of that tinting confirmed that all of the windows, except for the windshield, were in violation of WIS. ADMIN. CODE § Trans. 305.32(4)(b)2.

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version, unless otherwise noted.  Although we recognize that Williams was arrested and charged while the 2017-18 version was in effect, there is no difference in the language of this statute between these versions.

and (5)(b) (May 2014).  Therefore, the officers had reasonable suspicion of traffic violations to justify the **Terry** stop of the vehicle.  *See **Betow***, 226 Wis. 2d at 93.

¶15    Furthermore, the officers smelled marijuana coming from the vehicle. "The unmistakable odor of marijuana coming from an automobile provides probable cause for an officer to believe that the automobile contains evidence of a crime." ***State v. Secrist***, 224 Wis. 2d 201, 210, 589 N.W.2d 387 (1999).

¶16    Moreover, although Williams was not in the vehicle at the time the officers began their investigation, when he exited the gas station and approached the vehicle, one of the officers recognized him from a recent incident where the officer had issued Williams a parking citation for the same vehicle but with a different license plate.  The officers considered that incident in conjunction with their knowledge that vehicles with only one plate which is not linked to a specific vehicle suggests that the vehicle may have been stolen.  These are additional suspicious factors that justify expanding the scope of the investigation to a search of Williams' vehicle.  *See **Hogan***, 364 Wis. 2d 167, ¶35.

¶17    Thus, in applying the relevant constitutional principles to the facts set forth in the record, we conclude that the trial court did not err in denying Williams' motion to suppress.  *See **Eason***, 245 Wis. 2d 206, ¶9.

*Ineffective Assistance of Counsel Claims*

¶18    We next address Williams' claims that his trial counsel was ineffective in several ways.  To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense.  ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  The defendant "must prevail on both parts of the test to be afforded relief."  ***State v.***

6

*Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶19     A claim of ineffective assistance of counsel requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 274 Wis. 2d 568, ¶14. This is a question of law that we review *de novo*. *Id.*, ¶9.

¶20     If, on the other hand, the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court, in its discretion, may either grant or deny a hearing. *Id.* We will uphold such a discretionary decision if the trial court "has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." *Bentley*, 201 Wis. 2d at 318.

¶21     Williams first asserts that his trial counsel was ineffective for failing to file a *Daubert* motion seeking to preclude the testimony of the firearms and tool

mark examiner from the Wisconsin State Crime Lab regarding the tests she conducted on the shell casing recovered from the scene of the armed robbery of T.R. and the gun found in Williams' vehicle. Williams contends that the examiner was not properly qualified as an expert, as there was a lack of documentation regarding the methodology she used in conducting the tests, including a "peer review process."

¶22     However, the record indicates that the examiner began her testimony by explaining her extensive education and training in this field, which established her qualifications as an expert; indeed, she stated she had testified previously as an expert approximately seven times. "[P]ersonal knowledge and experience may form the basis for expert testimony." *State v. Hogan*, 2021 WI App 24, ¶25, 397 Wis. 2d 171, 959 N.W.2d 658. In fact, "the 'methodology' underlying the expert's conclusions is part and parcel of the expert's qualifications, and may be nothing more than rigorous participation in all of the various activities, trainings, and experiences available to that individual." *Id.*, ¶30. Although peer review and publication of a particular methodology is a factor that may be considered by the trial court in determining the reliability of expert testimony, it is not a necessary component. *See Seifert v. Balink*, 2017 WI 2, ¶¶62, 65, 372 Wis. 2d 525, 888 N.W.2d 816 (the trial court "may consider some, all, or none" of the *Daubert* factors to determine whether expert evidence is reliable).

¶23     The admission of expert testimony is within the discretion of the trial court, and that discretion is properly exercised "if it has a rational basis and was made in accordance with accepted legal standards in view of the facts in the record." *See State v. Smith*, 2016 WI App 8, ¶4, 366 Wis. 2d 613, 874 N.W.2d 610 (citation omitted). Upon review, we conclude that the firearms examiner's testimony was properly admitted by the trial court. *See id.* As a result, the filing of a *Daubert* motion seeking to exclude this testimony would not have been successful, and trial

counsel cannot be deemed to be deficient for failing to make a meritless argument. *See State v. Swinson*, 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12.

¶24 For Williams' next ineffective assistance claim, he asserts that his trial counsel failed to request a jury instruction regarding the investigating police detective's failure to keep notes of the witness interviews he conducted after the robbery of T.R. As the detective explained in his testimony, T.R. came into the police station with two friends to report the robbery. The detective took statements from all three men; however, the detective suspected that the statements by the two friends were "tainted," in that they described the incident the same way that T.R. had, yet they had indicated that they had fled when they heard the shot fired by Williams. Furthermore, they were not able to provide a description of the shooter. Thus, the detective believed that T.R.'s friends were simply repeating what T.R. had told them about the incident. As a result, the detective prepared a report of T.R.'s statement, but did not prepare reports of the statements given by his friends. The detective admitted on cross examination that he was unable to locate his notes regarding the statements of T.R.'s friends, and that his testimony was based on his memory of the interviews.

¶25 Williams failed to adequately plead this claim. A defendant's postconviction motion must allege "sufficient material facts for reviewing courts to meaningfully assess a defendant's claim," which generally should include "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *Allen*, 274 Wis. 2d 568, ¶23. Williams does not explain what jury instruction should have been requested, or why such an instruction was required. Furthermore, Williams does not explain how an instruction on this matter would have had an effect on the outcome of the trial. Rather, Williams merely speculates that had the notes been available, they "may have been able to expose some major inconsistencies in their

9

statements. This would have given the jury a powerful reason to consider that the identification of Williams was inadequate." This conclusory allegation is not sufficient to support a claim of ineffective assistance of counsel. *See id.*, ¶9. Therefore, Williams has not demonstrated that he was entitled to a hearing on this claim. *See id.*

¶26    Williams' next claim, that his trial counsel was ineffective for failing to request a different version of the jury instruction relating to identification testimony, also fails. In his postconviction motion and on appeal, Williams refers to "bracketed paragraphs" in WIS JI—CRIMINAL 141, and asserts that this "more detailed version" of the instruction should have been presented to the jury. In support of his argument, Williams cites *State v. Waites*, 158 Wis. 2d 376, 462 N.W.2d 206 (1990), which addressed the issue of whether the trial court there should have given the "more detailed version" of WIS JI—CRIMINAL 141. *Waites*, 158 Wis. 2d at 379. However, *Waites* was reviewing the version of the instruction from 1987. *See id.* at 383. The instruction has since been amended—most recently in 2012, according to the comments in the instruction—and there is no longer any optional language set forth in brackets. *See* WIS JI—CRIMINAL 141.

¶27    Here, the record indicates that WIS JI—CRIMINAL 141 was read to the jury in its entirety. Therefore, because the trial court correctly instructed the jury on the issue of identification, Williams' trial counsel cannot be deemed to be deficient on this issue. *See State v. Ziebart*, 2003 WI App 258, ¶17, 268 Wis. 2d 468, 673 N.W.2d 369.

¶28    Next, Williams claims that his trial counsel was ineffective for failing to impeach one of the arresting officers at the suppression hearing regarding the check of his license plate. Williams asserts that the officers did not run the license

plate until several hours after the stop, and that this information could have been used to impeach the officer's credibility regarding the reasonable suspicion for the stop.

¶29  However, the initial reason for the stop was that there was only one license plate on the vehicle, along with the suspicion that the level of tint on the windows was illegal—both of which are violations of the traffic code.  *See* WIS. STAT. § 341.15(1); WIS. ADMIN. CODE § Trans. 305.32(4)(b)2. and (5)(b).  As we have already concluded, these factors justified the investigatory stop of Williams' vehicle.  *See Betow*, 226 Wis. 2d at 93.  Furthermore, we also concluded that the smell of marijuana coming from the vehicle justified expanding the scope of the stop to a search of the vehicle.  *See Secrist*, 224 Wis. 2d at 210.  Williams fails to demonstrate how potentially impeaching the officer regarding the timing of the license plate check would have overcome these factors to change the outcome of the suppression motion hearing.  *See Strickland*, 466 U.S. at 687.  Therefore, this claim fails as well.

¶30  Williams' final ineffective assistance claim is that his trial counsel failed to read the search warrants specifically with regard to the cell phone information linking Williams with text messages sent to T.R. about the fake Craigslist advertisement.  However, an affidavit by the investigating officer—which Williams attached to his postconviction motion—demonstrates that the cell phone number listed in the Craigslist advertisement, to which T.R. had sent and received text messages regarding the vehicle purchase, had been linked to Williams.  Thus, this appears to be inculpatory evidence, and Williams fails to explain how this evidence could be exculpatory evidence that his trial counsel was ineffective for failing to investigate.  Therefore, this claim is inadequately pled.  *See Allen*, 274 Wis. 2d 568, ¶23.

11

¶31     In sum, all of Williams' ineffective assistance of counsel claims either fail on the merits or were inadequately pled. As a result, the postconviction court did not err in denying his motion without granting a hearing. *See id.*, ¶9.

*Due Process Violation Claim*

¶32     For Williams' final claim, we return to the issue of the interviewing detective's failure to retain his notes from his interviews with T.R.'s friends, which Williams asserts violated his right to due process. In order to "rise to the level of a due process violation," evidence which is "not preserved, lost or destroyed by the State 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994) (citation omitted); *see also State v. Huggett*, 2010 WI App 69, ¶13, 324 Wis. 2d 786, 783 N.W.2d 675 (confirming the due process test set forth in *Greenwold* for cases involving the State's failure to preserve evidence).

¶33     Similar to his ineffective assistance of counsel claim regarding this issue, here Williams again merely speculates that the missing notes "may have been able to play a significant role" in his defense, "[e]specially since identification was a major issue in the case." This type of conclusory allegation is not sufficient to obtain relief. *See Allen*, 274 Wis. 2d 568, ¶9. Furthermore, the detective testified that T.R.'s friends' statements matched T.R.'s to the extent that he believed the friends were simply repeating T.R.'s description of the incident. Williams fails to explain how the same description of the incident from T.R.'s friends would be exculpatory evidence helpful to his defense. *See id.*, ¶23. Moreover, T.R. and both of his friends testified at trial, and thus were subject to cross-examination regarding

their statements to police.  Therefore, Williams' claim of a due process violation fails.  *See **Greenwold***, 189 Wis. 2d at 66-67.

¶34     Accordingly, because all of Williams' claims fail, we affirm his judgments of conviction and the order denying his postconviction motion without a hearing.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

13